# IN THE COURT OF APPEALS OF IOWA

No. 19-1296
Filed November 27, 2019

**IN THE INTEREST OF J.W. and J.W.,**
**Minor Children,**

**J.W., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Kimberly Ayotte (no-contact order) and Lynn Poschner (adjudication and disposition), District Associate Judges.

        A father appeals the child-in-need-of-assistance adjudication concerning his children. **AFFIRMED.**

        Daniel M. Northfield, Urbandale, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Yvonne Naanep, Des Moines, attorney and guardian ad litem for minor children.

        Considered by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

A father appeals the child-in-need-of-assistance (CINA) adjudication concerning his children. The father did not preserve error on his claim a forensic interview was improperly admitted into evidence. We affirm the juvenile court decisions adjudicating the children to be CINA and denying the father's request to cancel a protective order.

## I. Background Facts & Proceedings

J.W., father, and M.W., mother, are parents of J.W., born in 2016, and J.W., born in 2018. The mother's other children, S.V. and J.T., also lived in the home. In January 2019, S.V., who was then fourteen years old, alleged she had been sexually abused by the father. She stated he placed his hand, mouth, and penis on her genital area. The father denied the sexual abuse. At the request of the Iowa Department of Human Services, the father left the family home. The juvenile court issued a no-contact order prohibiting the father from having contact with the children. There were no allegations of neglect or abuse of J.T., J.W., or J.W.

The State filed a CINA petition. On March 29, the father filed a motion seeking to cancel the no-contact order. He also filed a motion asking for dismissal of the CINA proceedings. On April 2, the no-contact order was amended to permit the father to have supervised visitation with J.W. and J.W.

On June 6, the juvenile court entered a CINA adjudication for all of the children under Iowa Code section 232.2(6)(c)(2) (2019); S.V. was also adjudicated under section 232.2(6)(d). The juvenile court found, "[The father] is not credible." The juvenile court stated, "[The father] is a threat to the safety of all of the children due to his abuse of [S.V.] and his refusal to participate in any services or address

the abuse he has perpetrated." The children remained in the care of the mother. The court denied the father's requests to cancel the no-contact order and dismiss the CINA proceedings.

After the CINA dispositional order, the father appealed the juvenile court's orders as they pertain to J.W. and J.W., his biological children.

## II.     Standard of Review

Our review of CINA proceedings is de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). "[T]he State bears the burden of proving its allegations by clear and convincing evidence." *Id.* "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.     Forensic Interview

During the CINA hearing, a forensic interview of S.V. was admitted. The father claims the interview should have been excluded because "[i]t was a violation of the Confrontation Clause of the Sixth Amendment of the U.S. Constitution." The father objected to the exhibit on the grounds of hearsay and lack of foundation. The juvenile court admitted the exhibit. We determine the father failed to preserve error on his constitutional claim because it was not raised before the juvenile court. "Under our rules of civil procedure, an issue which is not raised before the juvenile court may not be raised for the first time on appeal." *In re M.A.F.*, 679 N.W.2d 683,

685 (Iowa Ct. App. 2004). We conclude the father has failed to preserve error on the constitutional claim he raises on appeal.[1]

### IV.    Sufficiency of the Evidence

The father claims there is not sufficient evidence in the record to support the juvenile court's CINA adjudication of J.W. and J.W. He asserts the State did not establish that he sexually abused S.V. by clear and convincing evidence. The validity of the claimed sexual abuse was highly controverted. We acknowledge some of the evidence suggested it may be a false claim, but other evidence supported the claim. However, we cannot alter the adjudication of S.V. in this proceeding but may consider whether S.V.'s adjudication pursuant to section 232.2(6)(d)[2] necessitates an adjudication of J.W. and J.W. under section 232.2(6)(c)(2).[3]

If we would independently review the merits of S.V.'s sexual-abuse allegations and conclude they are true or rely upon S.V.'s adjudication in her separate proceeding, we would have no difficulty concluding the father and mother failed to exercise a reasonable degree of care in supervising the children. Both children were in the household when the sexual abuse allegedly occurred, and the youngest child was very close in proximity.

---

[1] Additionally, the Iowa Supreme Court has ruled "the Sixth Amendment Confrontation Clause does not apply to civil CINA proceedings." *In re E.H.*, 578 N.W.2d 243, 246 (Iowa 1998). Therefore, the father is not entitled to relief on his constitutional claim, even if the issue had been preserved for appeal.

[2] Section 232.2(6)(d) applies to a child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides."

[3] Section 232.2(6)(c)(2) applies when a child "has suffered or is imminently like to suffer harmful effect as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child."

The question then becomes whether the children are "imminently likely to suffer harmful effects" by a parent or another member of the household. Iowa Code § 232.2(6)(c)(2). The Iowa Supreme Court recently examined its past case law and concluded the phrase "imminently likely" must be liberally construed to prevent probable harm. *L.H.*, 904 N.W.2d at 150. In reaching this conclusion, the court noted,

> To illustrate, we have previously upheld the CINA adjudication of an eight-year-old boy under Iowa Code section 232.2(6)(d) where the record showed the father "exceeded all bounds of sexual propriety between himself, his daughter and her eight-year-old friend" yet did not exceed those bounds with the boy. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). In that case, the boy denied that his father had ever inappropriately touched him. But the father admitted to climbing into the bathtub to encourage his young daughter and her friend "to soap his chest and stomach and then slide down his body," and the daughter admitted that this activity had occurred on other occasions. *Id.* at 360–61. In finding that the boy was in imminent danger, we took note of "the common sense notion that, ordinarily, all siblings are at risk when one child has been sexually abused." *Id.* at 362.

*L.H.*, 904 N.W.2d at 150.

Although the supreme court was interpreting the phrase "imminently likely" in subsection (d) of section 232.2(6) in L.H., we conclude the same liberal construction should be given to the same phrase in subsection (c) of section 232.2(6). Moreover, the "common sense notion" that all siblings are at risk would be equally applicable to both subsections (c) and (d) We acknowledge J.W. and J.W. are much younger than S.V., but we feel compelled to follow the conclusions reached in both *D.D.*, 653 N.W.2d at 361, and *L.H.*, 904 N.W.2d at 150, that all siblings are at risk when one of the siblings in the home has been sexually abused.

Even if we reach the merits of S.V.'s sexual abuse allegations and determine the allegations are false, we remain convinced J.W. and J.W. were

properly adjudicated CINA. In reaching this conclusion, we have reviewed the expansive record de novo and find several reasons to be concerned about probable harm to these children. We do not limit ourselves to the question concerning the validity of the allegations because the record lacks any indication the State relied solely upon that issue.

Presently there is much family upheaval because of the family's circumstances and the allegations. The evidence depicts a household with few boundaries and little attention to both the mental health of S.V. and the mental and physical health of J.T. The latter child has been the victim of physical altercations, threats, and mental abuse inflicted by S.V. The mother also acknowledged the children spend at least every other weekend in the care of their grandparents. The mother acknowledged that for about the past five years during these visits, the grandfather sleeps on the floor in the same bedroom as S.V. She also expressed concern that the grandfather seems obsessed with S.V. Add to this environment the fact that S.V. was caught viewing pornography on the computer and has made sexual abuse allegations in the past towards others, including the father's brother. The latter allegation was clearly proven false as the father's brother was not present when the sexual abuse allegedly occurred, even though the allegations were vivid and detailed. Notwithstanding the false allegation, S.V. was left in the care of the father while the mother went to work and at a time when S.V. clearly was in need of more therapy. To the mother's credit and perhaps the father's as well, S.V. had received some therapy in the past, but the mother acknowledged S.V. had struggled with her mental health since school started months before the allegations surfaced.

We acknowledge none of these concerning facts relate directly to the safety and well-being of J.W. and J.W. Yet the inattention to proper boundaries and inattention to the mental health and physical safety of older siblings place the younger children, J.W. and J.W., at imminent risk. We also find alarming that before S.V. was removed from the home, J.T. expressed concern that the mother should lock her door at night or otherwise she may be stabbed by S.V. Adjudication and intervention is necessary for the safety of all children.

Accordingly, we affirm the CINA adjudication of J.W. and J.W.

## V.      Protective Order

The father claims the protective order as it pertains to J.W. and J.W. should be rescinded. He states he should not be prohibited from having contact, except for supervised visitation, with his own children as there was no evidence of harm to them.

In reviewing this issue de novo, we must consider the best interests of the children. *J.S.*, 846 N.W.2d at 40. We have stated in the past, "[u]ntil the root of the abusive behavior is resolved, all children in the home remain at risk of imminent harm." *In re D.B.*, No. 17-0740, 2017 WL 4317337, at *6 (Iowa Ct. App. Sept. 27, 2017). However, in *D.B.*, the evidence of physical abuse of one child was overwhelming, a fact not existing here. *See* 2017 WL 4317337, at *2. The root of the behavior here may be the father's sexual misconduct or S.V.'s acknowledgment that the conduct did not occur and her need for mental-health counseling. At least the latter is not out of the realm of possibility, unlike in *D.B.*

The father's difficulty is the fact another child, J.T., who is only a few years younger than S.V., also resides in the family home, and we are unable in these

proceedings to vacate the protective order as it concerns J.T. Although the risk of harm to the father's young biological children may not be as great as the risk to J.T., we decline to vacate the protective order. The juvenile court retains authority to determine if and when the protective order should be rescinded or modified for these two children.

We affirm the decisions of the juvenile court as they relate to J.W. and J.W.

**AFFIRMED.**